**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARCUS SUAREZ,** | : | **CIVIL NO. 1:11-CV-1087** |
| | : | |
| **Petitioner,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **KENNETH CAMERON, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

In this federal habeas corpus petition, the petitioner, Marcus Suarez, insists that his two state trial counsel were constitutionally ineffective for failing to file appeals on his behalf after he was sentenced to an aggregate term of 14-28 years imprisonment following his guilty pleas to a series of state drug trafficking charges. In this setting the legal and factual lynchpin for Suarez's claim of ineffective assistance of counsel is his assertion that both counsel failed to consult with him and follow his specific instruction that they lodge an appeal on his behalf following the imposition of these state sentences.

These precise issues were the subject of a hearing conducted with respect to Suarez's state Post-Conviction Relief Act (PCRA) petition. At this hearing, Suarez and his two counsel testified. For their part, both defense counsel consistently stated that Suarez never requested that they file an appeal on his behalf, and denied

receiving letters which Suarez produced long after the fact, letters that Suarez claimed to be contemporaneous requests to his counsel to appeal his conviction. Indeed, one of Suarez's former trial counsel characterized this purported letter as a fraud, correspondence manufactured after-the-fact to support a meritless claim that the petitioner had requested that counsel take an appeal on his behalf.

Presented with these starkly conflicting claims regarding a factual matter which rested at the heart of Suarez's post-conviction petition, his claim that he timely requested that counsel appeal on his behalf, the state trial court found that Suarez's claims that he made timely requests of counsel to appeal were not credible, and concluded consistent with the greater weight of the evidence at the PCRA hearing that Suarez did not request that his counsel file an appeal on his behalf. This factual finding was then affirmed by the state appellate court, which also found that the PCRA hearing record revealed that both trial counsel had adequately consulted with Suarez about his appellate rights and options prior to Suarez's decision electing not to file an appeal.

It is against this factual background that Suarez now reprises these ineffective assistance of counsel claims in this federal habeas corpus petition. However, given the deferential standard of review which we are obliged to apply to the state court factual determinations, we conclude that Suarez cannot show an entitlement to federal post-conviction relief because the state court factual findings regarding his

failure to timely seek an appeal are presumed to be correct, and Suarez has not rebutted this presumption by clear and convicting evidence. 28 U.S.C. §2254(e)(1).

## II. Statement of Facts and of the Case

The pertinent factual background of this case can be simply stated: In 2007 Marcus Suarez faced a series state charges relating to alleged drug trafficking in Luzerne County, Pennsylvania. Suarez was represented by two different attorneys in connection with these pending state charges: Nandakumar Palissery, Esq., who had been retained by Suarez to represent him on some drug matters; and Vito DeLuca, Esq., who was appointed to represent Suarez in additional drug cases brought against the petitioner.

On January 23, 2007, Suarez pleaded guilty to an array of state drug charges as part of a negotiated plea agreement with the Commonwealth. (Doc. 22-1.) At the time of this guilty plea, the trial court engaged in a thorough colloquy with Suarez. In this colloquy the penalties for each of these offenses was carefully detailed, (id.), and the trial court specifically advised Suarez that "you are facing significant jail time[.] Do you under that?" to which Suarez replied: "yes". (Id., p.7.) The trial court also specifically explained to Suarez that a number of offenses individually carried maximum penalties of 15 to 30 years in prison, and Suarez acknowledged that he faced such penalties upon his guilty pleas. (Id.) The trial court also warned Suarez that these penalties could be imposed consecutively upon the petitioner, and Suarez

acknowledged that he understood that he potentially faced consecutive jail terms. (Id.) Knowing all of this, and with a clear understanding of the penalties he faced, Suarez pleaded guilty to these offenses. (Id.)

Suarez then proceeded to sentencing on these charges on March 1, 2007. At sentencing the trial court heard from Suarez, his counsel, the assistant district attorney, and a prison chaplain. (Doc. 22-2.) Ultimately the court imposed a sentence of 14 to 28 years imprisonment upon Suarez, a sentence which fell below the penalties outlined for Suarez at the time of his guilty plea. (Id.) In imposing this sentence the trial court observed that Suarez was a “professional drug dealer” who had been charged seven time with drug trafficking in Luzerne County. (Id.) The court also noted that the sentences imposed upon Suarez all fell within the standard sentencing range under the state sentencing guidelines.(Id.) Finally, the court advised Suarez on the record of his post-conviction and appeals rights, notifying Suarez that he was required to file an appeal within 30 days of imposition of sentence. (Id.)

Suarez did not timely appeal this sentence. Instead, one year later, on March 20, 2008, Suarez filed a *pro se* petition under Pennsylvania’s Post Conviction Relief Act, (PCRA), alleging that his two trial counsel had abandoned him and failed to follow his explicit instructions that they file appeals on his behalf. (Doc. 22-6.) On

July 23, 2008, the trial court conducted a hearing on Suarez's petition, a hearing at which Suarez, and both of his trial counsel testified. (Doc. 22-5.)

At this hearing the trial court was presented with two starkly contrasting factual narratives. For his part, Suarez insisted that he had expressly requested that counsel appeal his conviction and sentence. (Id.) While Suarez presented no independent eyewitnesses to corroborate his account, he tendered to the court letters he had purportedly written in a timely fashion to both of his defense counsel demanding that they appeal his conviction. (Id.)

In contrast, attorneys DeLuca and Palissery both denied Suarez's claims that he requested that they take an appeal on his behalf. (Id.) Instead each attorney explained that he met with Suarez following the sentencing, consulted with him, and advised him of the low probability of success on an appeal of a sentence which fell within the standard sentencing range prescribed by state sentencing guidelines. (Id.) While both counsel acknowledged that Suarez was disappointed by the sentence, each attorney independently testified that, following this consultation, Suarez did not request an appeal. (Id.) Indeed, counsel testified that they independently verified with one another that Suarez had declined to appeal after they met separately with the petitioner. (Id.)

As for Suarez's claims that he had timely written to counsel directing them to appeal, both counsel denied receiving the letters Suarez claimed to have written and

one counsel, Attorney DeLuca, explained that the letter which Suarez presented to the court was: "a fraud. I don't know what else to say. He obviously had written this up at some point afterwards. I did not receive it at the Public defender's Office." (Id., p. 22-23.)

At the close of this hearing, the trial judge issued an opinion and order denying Suarez's petition. (Id.) This trial court ruling rested upon its factual finding that Suarez did not request that counsel file an appeal on his behalf. (Id.) In this regard, the trial court credited the testimony of both counsel, and specifically found Suarez's claims regarding his requests, and the letters he claimed he had written, to be "less than truthful" and without any credibility whatsoever." (Id., p. 34.)

Suarez appealed this decision to the Pennsylvania Superior Court, which affirmed the judgment of the trial court in an opinion issued on September 14, 2009. (Doc. 22-6.) Like the trial court opinion, the state Superior Court decision was grounded on factual findings, with the state appellate court finding that the trial judge correctly concluded that Suarez's claims that he requested an appeal were wholly lacking in credibility. (Id.) The state appellate court further found as a factual matter that the transcript of Suarez's state PCRA hearing affirmatively disclosed that both counsel had faithfully discharged their duty to consult with Suarez regarding his appellate rights and options. (Id.) Having made these factual

findings, the appellate court affirmed the decision denying post-conviction relief to Suarez. (Id.)

Suarez then belatedly exhausted his state appellate rights with respect to this issue, in 2011, (Docs. 22-7 and 22-8), before filing the instant federal habeas corpus petition. (Doc. 1.) This petition reprises the claims which the state courts have rejected as a factual matter, arguing once again that both trial counsel failed to file an appeal on his behalf despite Suarez's purported instructions to them to pursue an appeal. This matter is fully briefed by the parties, and is now ripe for resolution. Because the factual record does not support Suarez's claims, but rather contradicts those claims, under the deferential standard of review which we must apply when assessing factual determinations made by state courts it is recommended that this petition be denied.

## III. Discussion

### A. Suarez's Petition Fails Because The Petitioner Has Not Shown By Clear and Convincing Evidence That The Factual Findings of the State Courts Which Are Fatal to His Claims Were Erroneous.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that

> he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
>> **(A)** the applicant has exhausted the remedies available in the courts of the State;
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely

inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings. There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either: (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2). Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts. See Rice v. Collins, 546 U.S. 333, 338-39 (2006); see

also Warren v. Kyler, 422 F.3d 132, 139-40 (3d Cir. 2006); Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a state court is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. §2254(e)(1). This presumption in favor of the correctness of state court factual findings has been extended to a host of factual findings made in the course of criminal proceedings. See, e.g., Maggio v. Fulford, 462 U.S. 111, 117 (1983) (per curiam); Demosthenes v. Baal, 495 U.S. 731, 734-35 (1990). This principle applies to state court factual findings made both by the trial court and state appellate courts. Rolan v. Vaughn, 445 F.3d 671 (3d Cir. 2006). Thus, we may not re-assess credibility determinations made by the state courts, and we must give equal deference to both the explicit and implicit factual findings made by the state courts. Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000). Accordingly, in a case such as this, where a state court judgment rests upon factual findings, it is well-settled that:

> A state court decision based on a factual determination, . . . , will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding. Miller-El v. Cockrell, 537 U.S. 322 (2003). We must presume that the state court's determination of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir.2000).

Rico v. Leftridge-Byrd, 340 F.3d 178, 181 (3d Cir. 2003).

Applying this standard of review, federal courts may only grant habeas relief whenever "[o]ur reading of the PCRA court records convinces us that the Superior Court made an unreasonable finding of fact." Rolan v. Vaughn, 445 F.3d 671, 681 (3d Cir. 2006).

These general principles apply with particular force to habeas petitions that are grounded in claims of ineffective assistance of counsel. It is undisputed that the Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in order to survive. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) that, but for counsel's errors, the result of the underlying proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1984). A petitioner must satisfy both of the Strickland prongs in order to maintain a claim of ineffective counsel. George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).

At the outset, Strickland requires a petitioner to "establish first that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. Id. Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Id. However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." Id. (quoting Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief. Under the second Strickland prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." Id. This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." Id.

Thus, as set forth in Strickland, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "A fair

assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 U.S. at 689). The petitioner must then prove prejudice arising form counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."'" Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006)(quoting Strickland, 466 U.S. at 696.)

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law are substantively consistent with the standard set forth in Strickland. See Commonwealth v. Pierce, 527 A.2d 973, 976-77 (Pa. 1987); see also Werts v. Vaugh, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted Strickland and thus was not 'contrary to' established Supreme Court precedent."). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought

in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of Strickland. Billinger v. Cameron, 2010 U.S. Dist. LEXIS 63759, at *11 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); see also Waddington v. Sarausad, __ U.S. __, 129 S. Ct. 823, 831 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted). This additional hurdle is added to the petitioner's substantive burden under Strickland. See Knowles v. Mirzayance, __ U.S. __, 129 S. Ct. 1411, 1420 (2009) (observing "the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas.").

In the specific factual context of ineffectiveness claims based upon an alleged failure to take an appeal, there are several essentially factual components to a successful post-conviction claim. First, the Supreme Court has held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. See id., at 690, 104 S.Ct. 2052 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).

Therefore, as a threshold matter it must be determined whether counsel fulfilled their duty to consult with Suarez regarding his appellate options. In this regard, the Pennsylvania Superior Court has expressly found as a factual matter that both defense counsel did consult with Suarez. (Doc. 22-6.) This factual finding, in turn, is firmly grounded in the testimony of both counsel, who described their consultations with Suarez. (Doc. 22-5.) For his part, Suarez has presented no evidence contesting that this consultation occurred, much less proving by clear and convincing evidence that this factual finding was erroneous. Therefore this state court factual finding, which is unimpeached, is fatal to any ineffectiveness

challenge based upon an alleged failure to consult with the petitioner regarding his appellate rights and options.

There is a second, factually-grounded, aspect to an ineffective assistance of counsel claim in this context. The United States Supreme Court has also:

> [L]ong held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. See Rodriquez v. United States, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); cf. Peguero v. United States, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).

Thus, a factual showing that counsel, without justification, failed to file a requested appeal is conduct which is inherently professionally unreasonable, and satisfies the first element of the Strickland standard for weighing the ineffectiveness of counsel.

Once this showing is made, case law also suggests that where:

> [C]ounsel's deficient performance deprived [a petitioner] of a notice of appeal and, hence, an appeal altogether. . . , counsel's deficient performance has deprived [petitioner] of more than a *fair* judicial proceeding; that deficiency deprived [petitioner] of the appellate proceeding altogether. . . .[T]he complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of

> prejudice because “the adversary process itself” has been rendered “presumptively unreliable.” The even more serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, similarly demands a presumption of prejudice. Put simply, we cannot accord any “ ‘presumption of reliability,’ to judicial proceedings that never took place ”

Roe v. Flores-Ortega, 528 U.S. at 483(citations omitted).

Therefore, in this setting: “To establish prejudice, ‘a defendant must [simply] demonstrate that there is a reasonable probability that, but for counsel's [ineffective assistance], he would have timely appealed.’ Flores-Ortega, 528 U.S. at 484, 120 S.Ct. 1029.” Hodge v. United States, 554 F.3d 372, 381 (3d Cir. 2009). In sum, “when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal,” without any further showing of prejudice. Roe v. Flores-Ortega 528 U.S. 470, 484-5.

However, in this context, the factual predicate to any ineffective assistance of counsel claim is a finding that the petitioner requested that counsel pursue an appeal on his behalf. Further, in this case Suarez’s current ineffectiveness claim fails on these factual grounds. With respect to this issue, Suarez was given an opportunity to prove this claim before the state court at an evidentiary hearing in which both the petitioner and his two trial counsel testified. At the close of this hearing the state

trial judge made a factual finding, which was affirmed on appeal, that Suarez did not request that counsel lodge an appeal on his behalf.

That factual finding is fully supported by the evidence developed at this hearing, the greater weight of which contradicted Suarez's claims. Thus, both counsel testified that they independently met with Suarez and consulted with him regarding his appeal rights. While counsel noted that Suarez was disappointed with his sentence, both counsel understood that Suarez had decided not to appeal his guilty plea conviction and sentence. Both counsel contemporaneously corroborated their independent observations with one another following Suarez's sentencing, and as the state courts aptly noted neither counsel would have had any motive to refuse to pursue an appeal if one was timely requested, or falsely deny that such a request was made if it had been made.

As for Suarez's claims, and the supporting letters he produced in support of those claims, the trial judge found Suarez's claims regarding his requests and the letters he had written to be "less than truthful" and without any credibility whatsoever." (Doc. 22-5, p. 34.) This ruling relating to Suarez's credibility was, in turn, affirmed on appeal. (Doc. 22-6.) It is well-settled that we may not re-assess this credibility determination made by the state courts. Weeks v. Snyder, 219 F.3d 245, 258 (3d Cir. 2000). However, in any event, that credibility assessment is, in fact, supported by the greater wight of the evidence. As a matter of law, the

determination of a factual issue by a state court, like this determination that Suarez did not timely request an appeal, is presumed to be correct unless the petitioner can show by clear and convincing evidence that this factual finding was erroneous. See 28 U.S.C. §2254(e)(1). In this case, Suarez has not presented clear and convincing evidence to rebut these factual findings. Therefore, the factual findings of the state courts stand, are fatal to this petition, and compel denial of the petition for writ of habeas corpus.

## IV. Recommendation

For the foregoing reasons, it is recommended Suarez's motion for summary judgment (Doc. 35) and petition for writ of habeas corpus, (Doc. 1), be DENIED, and that no certificate of appealability issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or

where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of July, 2014.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge